

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mrs. Willie O'Neal
County Auditor
Carson County
Panhandle, Texas

Dear Mrs. O'Neal:

Opinion No. O-2224
Re: Constitutionality of House Bills Nos. 193 and 438 of the 46th Legislature of Texas - County Auditor.

Your request for opinion has been received and carefully considered by this department. We quote from your letter of request as follows:

"In March of last year a bill was introduced in the Legislature to take care of the payment of a Secretary to the County Judge of Carson County, and was placed as an amendment to House Bill No. 438, allowing a secretary to the County Judge of Carson County at a salary not to exceed $100.00 per month. I do not have a copy of this Bill in my office but I understand that it was passed and approved. I am sure you are familiar with it.

"Will you please advise me if this is sufficient to employ a Secretary to the County Judge at a salary set by the Commissioners' Court not to exceed $100.00 per month.

"Also we have a letter from Honorable Omar Burkett, Representative of 107th District, dated April 3, 1939, as to the payment of actual car expense of the Commissioners of Carson County, which reads as follows:

"County Judge, Carson County
Panhandle, Texas
Dear Sir:

"I enclose herewith exact copy of the law which allows the Commissioners' Court of Carson

County to pay each individual member of said Court, the amount not to exceed $35.00 per month for actual car expense. I am sending this for your files so that you and the Commissioners will have same for reference at all times.

"If I can serve you people in any manner, please call on me at any time.

"Yours very truly

(signed) Omar Burkett Representative
107th District

OB:KW
Encl.

"The Copy attached to the above letter is H. B. No. 193.

"Please advise me regarding the payment of this car expense and any liability I may have in the matter."

House Bill No. 193 of the 46th Legislature of Texas reads as follows:

"COUNTY COMMISSIONERS - TRAVELING EXPENSES

H. B. NO. 193

"AN ACT authorizing the Commissioners Court in each county in this State having a population of not less than seven thousand, seven hundred (7,700) and not more than seven thousand, eight hundred (7,800); and counties having a population of not less than twelve thousand, seven hundred and twenty-five (12,725) nor more than twelve thousand, eight hundred and twenty-five (12,825); and counties having a population of not less than seventeen thousand, five hundred and sixty (17,560) nor more than seventeen thousand, five hundred and ninety (17,590); and counties having a population of not less than twenty-three thousand, six hundred and fifty (23,650) nor more than twenty-three thousand, seven hundred (23,700); and counties having a population of not less than twenty-four thousand, two hundred (24,200) nor more than

twenty-four thousand, two hundred and seventy-five (24,275), according to the last preceding Federal Census, to allow each County Commissioner certain expenses for traveling and in connection with the use of his automobile on official business only and/or in overseeing the construction and maintenance of the public roads of the county; requiring each such Commissioner to pay the expense of operation and repair of such vehicle so used by him without any further expense whatsoever to the county; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1.  In any county in this State containing a population of not less than seven thousand, seven hundred (7,700) and not more than seven thousand, eight hundred (7,800); and counties having a population of not less than twelve thousand, seven hundred and twenty-five (12,725) nor more than twelve thousand, eight hundred and twenty-five (12,825); and counties having a population of not less than seventeen thousand, five hundred and sixty (17,560) nor more than seventeen thousand, five hundred and ninety (17,590); and counties having a population of not less than twenty-three thousand, six hundred and fifty (23,650) nor more than twenty-three thousand, seven hundred (23,700); and counties having a population of not less than twenty-four thousand, two hundred (24,200) nor more than twenty-four thousand, two hundred and seventy-five (24,275), according to the last preceding Federal Census, the Commissioners Court is hereby authorized to allow each Commissioner not more than the sum of Thirty-five Dollars ($35) per month to be paid out of the Road and Bridge Fund of each respective Commissioner's Precinct, for traveling expenses and depreciation on the automobile while used on official business only and/or in overseeing the construction and maintenance of the public roads of said counties.  Each such Commissioner shall pay all expenses in the operation of such automobile and keep same in repair at his own expense, free of any other charge whatsoever to the county.

"Sec. 2. The fact that in the counties affected by this Act there is great need that the counties participate in defraying the expense of such Commissioners.because the great amount of road work now going on increases the necessity of such Commissioners traveling from place to place overseeing the construction and maintenance of such roads creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

"Approved March 31, 1939.
"Effective March 31, 1939."

Carson County, Texas, according to the last preceding Federal Census of 1930, has seven thousand, seven hundred and forty-five (7,745) inhabitants, and is the only county in Texas coming within the population brackets of not less than seven thousand, seven hundred (7,700) and not more than seven thousand, eight hundred (7,800), set out in House Bill 193, supra.

Callahan County, Texas, according to the last preceding Federal Census of 1930, has twelve thousand, seven hundred and eighty-five (12,785) inhabitants, and is the only county in Texas coming within the population brackets of not less than twelve thousand, seven hundred and twenty-five (12,725) and not more than twelve thousand, eight hundred and twenty-five (12,825) set out in House Bill 193, supra.

Palo Pinto County, Texas, according to the last preceding Federal Census of 1930, has seventeen thousand, five hundred and seventy-six inhabitants (17,576) and is the only county in Texas coming within the population brackets of not less than seventeen thousand, five hundred and sixty (17,560) and not more than seventeen thousand, five hundred and ninety (17,590) set out in House Bill 193, supra.

Coleman County, Texas, according to the last preceding Federal Census of 1930, has twenty-three thousand, six hundred and sixty-nine (23,669) inhabitants, and is the

only county in Texas coming within the population brackets
of not less than twenty-three thousand, six hundred and
fifty (23,650) and not more than twenty-three thousand,
seven hundred (23,700) set out in House Bill 193, supra.

Jones County, Texas, according to the last pre-
ceding Federal Census of 1930, has twenty-four thousand,
two hundred and thirty-three (24,233) inhabitants, and is
the only county in Texas coming within the population
brackets of not less than twenty-four thousand, two hun-
dred (24,200) and not more than twenty-four thousand, two
hundred and seventy-five (24,275) set out in House Bill
193, supra.

House Bill 438 of the 46th Legislature of Texas
reads as follows:

"COUNTY JUDGE - STENOGRAPHER OR CLERK

H. B. No. 438

"AN ACT authorizing the County Judge to employ a
stenographer or clerk in counties having a popula-
tion of not more than seven thousand, eight hun-
dred (7,800) and not less than seven thousand,
seven hundred (7,700) and in counties of not more
than ten thousand, four hundred and ninety-nine
(10,499) and not less than ten thousand, three
hundred and ninety-nine (10,399) inhabitants, ac-
cording to the last preceding Federal Census; fix-
ing salary of same; providing for payment of salary;
providing for removal; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF
TEXAS:

"Section 1. In any county in this State with
a population of not more than seven thousand, eight
hundred (7,800) and not less than seven thousand,
seven hundred (7,700), and in counties of not more
than ten thousand, four hundred and ninety-nine
(10,499) and not less than ten thousand, three
hundred and ninety-nine (10,399) inhabitants, ac-
cording to the last preceding Federal Census, the
County Judge shall be and is hereby authorized to
employ a stenographer or a clerk at a salary of not

to exceed One Hundred Dollars ($100) per month.
Such salary is to be paid monthly by county
warrants drawn on the county general fund, the
county salary fund, or the road and bridge fund,
or either of them, on the orders of the Commis-
sioners Court of such county. Such a stenographer
or clerk shall be subject to removal at the will
of such County Judge.

"Sec. 2. The fact that in the class of coun-
ties affected by this Act there is great need for
a stenographer or clerk by the county, and the
fact that this Act should take effect as soon as
possible, create an emergency and an imperative
public necessity that the Constitutional Rule re-
quiring bills to be read on three several days
in each House be suspended, and the same is here-
by suspended, and this Act shall take effect and
be in force from and after its passage, and it
is so enacted.

"Filed without Governor's signature April 20,
1939.
"Effective April 20, 1939."

Carson County, Texas, according to the last preced-
ing Federal Census of 1930, has seven thousand, seven hun-
dred and forty-five (7,745) inhabitants and is the only county
in Texas coming within the population brackets of not more than
seven thousand, eight hundred (7,800) and not less than seven thou-
sand, seven hundred (7,700) set out in House Bill 438, supra.

Willacy County, Texas, according to the last pre-
ceding Federal Census of 1930, has ten thousand, four hun-
dred and ninety-nine (10,499) inhabitants and is the only
county in Texas coming within the population brackets of
not more than ten thousand, four hundred and ninety-nine
(10,499) and not less than ten thousand, three hundred and
ninety-nine (10,399) set out in House Bill 438, supra.

At the very outset of this opinion, we are con-
fronted with the constitutionality of the above quoted bills.
The question arises as to whether or not these bills are local
or special laws regulating or attempting to regulate the
affairs of counties in violation of Article 3, Section 56 of
the Constitution of Texas.

The case of Altgelt vs. Gutzeit, 201 SW 400, holds
that a Bexar County Road Law, providing for an annual salary
for commissioners of the county for acting in all capacities,

was unconstitutional, as an attempted regulation of county affairs by local and special law.

The case of Smith vs. State, 49 SW 2nd 739, holds that the constitutional prohibition against special laws cannot be evaded by making law applicable to a pretended class and that a statute classifying municipalities by population is "special" if population does not afford fair basis for classification but statute merely designates single municipality under guise of classifying by population. We quote from said case as follows:

"A consideration of the classification created by the act involved in the present case in the light of Article 3, Section 56 of the Constitution, primarily calls for the application of the rule that the Legislature cannot evade the prohibition of the Constitution by making a law applicable to a pretended class, which is as manifested by the act, in fact, no class. Clark vs. Finley, 54 SW 343, supra. Some of the tests for determining whether a pretended class is manifested by an act are laid down by McQuillan on Municipal Corporations, Volume 1, pages 498, 499. We quote: 'The classification adopted must rest in real or substantial distinction, which renders one class, in truth, distinct or different from another class.... There must exist a reasonable justification for the classification; that is, the basis of the classification invoked must have a direct relation to the purpose of the law....'"

In the case of Wood vs. Marfa Independent School District, 123 SW 2nd 429, the court used the following language:

"We take judicial knowledge that no other county in Texas has the qualification of area and population demanded by the statutes.... It is sufficient to say here that when we look to the practical operation of the act, we are led to the conclusion that beyond doubt it was the purpose of the Legislature to single out Presidio County and make the act applicable to that county alone. Bexar County vs. Tynan, 97 SW 2nd 467. For that reason the act is a local act and one which it was beyond the power of the Legislature to enact. Vernon's Annotated Civil Statutes, Texas Constitution,

Article 3, Section 56; Brownfield vs. Tongate,
109 SW 2nd 352; City of Fort Worth vs. Bobbitt,
36 SW 2nd 470; Fritter vs. West, 65 SW 2nd 414;
Austin Bros. vs. Patton, 388 SW 182; Smith vs.
State, 49 SW 2nd 739."

This department held in its opinion No. 0-18 on
March 6, 1939, that Articles 2372e-1 and 5221b-23, Revised
Civil Statutes of Texas, 1925, the former being applicalbe
to counties having a population of not less than forty-
eight thousand, nine hundred (48,900) and not more than
Forty-nine thousand (49,000) and the latter applying to
counties with a population of not less than forty-eight
thousand, nine hundred (48,900) and not more than forty-
eight thousand, nine hundred and seventy-five (48,975)
and counties with a population of not less than ten thou-
sand, three hundred and seventy (10,370) and not more
than ten thousand, three hundred and eighty (10,380),
according to the last preceding Federal Census, were un-
constitutional and void as special laws under Section 56,
Article 3 of the State Constitution, citing the case of
the City of Fort Worth vs. Bobbitt, 36 SW 2nd 470.

This department held in its opinion No. 0-364,
on March 1, 1939, that Article 3902, Section 3a thereof,
Revised Civil Statutes of Texas, 1925, providing for an
office assistant, bookkeeper and stenographer in counties
having a population of not less than forty-eight thousand
nine hundred (48,900) and not more than forty-nine thousand
(49,000) inhabitants, according to the last preceding Fed-
eral Census, was void under Article 3, Section 56, of the
State Constitution.

This department held in its opinion No. 0-462,
on March 21, 1939, that House Bill 632, 46th Legislature,
which provides for the attachment of adjacent territory
for zoning purposes by towns of not less than four thou-
sand (4,000) inhabitants within counties of not less than
three hundred thousand (300,000) and not more than three
hundred and fifty thousand (350,000) inhabitants according
to the last preceding Federal census, was unconstitutional
in that it attempted to enact a local law and fell within
the prohibition of Article 3, Section 56 of the Constitution
of Texas.

Opinion No. O-899 of this department holds that House Bill 866 of the 46th Legislature of Texas, a bill attempting to provide traveling expenses for commissioners of counties having a population of not less than twenty-two thousand, one hundred (22,100) and not more than twenty-two thousand, five hundred (22,500) inhabitants according to the last preceding Federal Census, is unconstitutional and void as a local or special law attempting to regulate the affairs of a county in contravention of Section 56 of Article 3 of the Constitution.

Opinion No. O-1955 of this department holds that House Bill 236 of the 46th Legislature of Texas, a bill attempting to provide traveling expenses for commissioners of counties having a population of not less than thirty-four thousand (34,000) nor more than thirty-four thousand, two hundred (34,200) inhabitants, according to the last preceding Federal Census, is unconstitutional and void as a local or special law attempting to regulate the affairs of a county in contravention of Section 56 of Article 3 of the Constitution.

This department has held a large number of similar acts to be unconstitutional and void.

You are therefore respectfully advised that it is the opinion of this department that House Bills 193 and 438 of the 46th Legislature of Texas, quoted above, are local and special laws attempting to regulate the affairs of counties, in contravention of Section 56 of Article 3 of our State Constitution and are therefore unconstitutional and void.

You also inquire in your letter of request as to your liability for paying out county funds under these bills.

Article 1649, Revised Civil Statutes of Texas, reads as follows:

"Art. 1649. Bond and Oath. - The auditor shall, within twenty days of his appointment, and before he enters upon the duties of his office, make a bond with two or more good and sufficient sureties, in the sum of five thousand dollars, payable to

the county judge, conditioned for the faithful performance of his duties, to be approved by the commissioners court. He shall also take the official oath and an additional one in writing, stating that he is in every way qualified under the provisions and requirements of this title, and giving fully the positions of private or public trust he has heretofore held, and the length of service under each. He shall further include in his oath that he will not personally be interested in any contract with the county."

Article 1651, Revised Civil Statutes of Texas reads as follows:

"General Duties. - The auditor shall have a general oversight of all the books and records of all the officers of the county, district or State, who may be authorized or required by law to receive or collect any money, funds, fees or other property for the use of, or belonging to, the county; and he shall see to the strict enforcement of the law governing county finances."

Article 1653, Revised Civil Statutes of Texas reads as follows:

"To Examine Account. - He shall have continual access to and shall examine all the books, accounts, reports, vouchers and other records of any officer, the orders of the commissioners court, relating to finances of the county, and all vouchers given by the trustee of all common school districts of the county and shall inquire into the correctness of same."

Article 1660, Revised Civil Statutes of Texas reads as follows:

"Approval of Claims. - All claims, bills and accounts against the county must be filed in ample time for the auditor to examine and approve same before the meetings of the commissioners court. No claim, bill or account shall be allowed or paid until it has been examined and approved by the county auditor. The auditor shall examine the same and stamp his approval thereon. If he deems it necessary, all such accounts, bill, or claims must be verified by affidavit touching the correct-

ness of the same. The auditor is hereby author-
ized to administer oaths for the purposes of this
law."

Article 1661, Revised Civil Statutes of Texas reads
as follows:

"Requisites of Approval. - He shall not audit
or approve any such claim unless it has been con-
tracted as provided by law, nor any account for
the purchase of supplies or materials for the use
of said county or any of its officers, unless,
in addition to other requirements of law, there
is attached thereto a requisition signed by the
officer ordering same and approved by the county
judge. Said requisition must be made out and
signed and approved in triplicate by the said
officers, the triplicate to remain with the offi-
cer desiring the purchase, the duplicate to be
filed with the county auditor, and the original
to be delivered to the party from whom said
purchase is to be made before any purchase shall
be made. All warrants on the county treasurer,
except warrants for jury service, must be counter-
signed by the county auditor."

The case of Southern Surety Company et al vs.
Hidalgo County, 83 SW 2d 313, Commission of Appeals of Texas,
Section B holds that the failure of the county auditor to
cause proper entry to be made on county books of the re-
ceipt and deposit of a warrant payable to the county and
to make report to the commissioners' court showing receipt
of money entitles the county to recover judgment against
the auditor and the surety on his official bond, on the
ground of the auditor's malfeasance in office. We quote
from the court's opinion as follows:

"The office of county auditor is highly
important under our scheme of local self-
government. His selection is removed as far
as possible from direct political influence
by requiring his appointment at the hands of
the district judges of the county. The sta-
tutory qualifications and oath prescribed for the
incumbent of this office are exceptional. He
must be of unquestionable good moral character and
intelligence, thoroughly competent in business
details. He is required to take the usual offi-

cial oath of office, and also an additional
oath, in writing, stating he is in every way quali-
fied under the provisions and requirements of the
law relating to his office, the positions of pub-
lic trust or private trust he has theretofore held,
and the length of service under each. He is also
required to include in his additional oath that
he will not be personally interested in any con-
tract with the county. Articles 1648, 1649, R. S.
1925. Article 1651 provides that the auditor
shall have "general oversight of all the books
and records of all the officers of the county,
district or State, who may be authorized or re-
quired by law to receive or collect any money...
for the use of, or belonging to the county; and
he shall see to the strict enforcement of the law
governing county finances.' Article 1653, pro-
vides 'he shall have continual access to and shall
examine all the books, accounts, reports, vouchers
and other records....relating to the finances of
the county....and shall inquire into the correct-
ness of same.'.....

"Article 1663 makes it his duty specifically
to require all persons who have received money
belonging to the county, or have the disposition
or management of any of the property of the county
to render statements to him. The succeeding arti-
cle (1664) provides, 'he shall keep a general set
of books showing all of the transactions of the
county relating to accounts, contracts, indebted-
nesses of the county, and its receipts and dis-
bursements of all kinds, and shall make tabulated
reports of said funds and accounts for each regu-
lar meeting of the commissioners' court.'....

"The foregoing resume of the nature and duties
of the office of county auditor is made for the
purpose of showing not only what the statutory
duties incumbent upon him are, but also as reflect-
ing the power conferred upon him by the Legislature,
and his obligations in consequence thereof, in the
matter of safeguarding county funds.

"....Whether through violation of law or
dereliction of his official duty, he secured pos-
session of the warrant and its proceeds, and it
was his duty as auditor to see that the proper

fund of the county received credit for same
and to see that entries were made upon the
county records reflecting their proper handling
and disposition.... He was charged by law with
knowledge of how receipt of the funds could be
procured from the county treasurer. Article 1657.
The fact that the county's funds were in his
hands did not take from him power to make, or
cause to be made, proper accounting to the
county. His statutory duty was plain to cause
proper entries to be made upon the books of the
county, and upon deposit of the funds to charge
the same to the county treasurer, crediting the
amount to the party depositing same. Articles
1656, 1657. It was his duty thereupon to make
a report to the commissioners' court showing re-
ceipt by the county of this money. Article 1665.
His failure to do any of these things constitutes
a flagrant violation of the condition of his bond
to faithfully perform the duties required of him
by law. His acquiring possession of the county's
funds in the manner stated, together with his
failure to cause proper accounting for same and
make report thereof, was such conduct with re-
spect to his official duties as to constitute
malfeasance in office. Certainly this is true
in the absence of any showing, or attempted show-
ing, of justification on his part for such fail-
ure...." (Underscoring ours)

It is fundamental law that a claim against a county
based upon an unconstitutional statute is not a lawful claim
against the county. It is the duty of the county auditor
to see that only lawful claims against the county are paid.
He has no authority to approve an unlawful claim against the
county. Article 1651, R. C. S., supra, also provides, among
other things, that the county auditor shall see to the strict
enforcement of the law governing county finances. As pointed
out above, the official bond of the county auditor is con-
ditioned upon the faithful performance of his duties.

In view of the above authorities, you are respect-
fully advised that it is the opinion of this department that
you have no authority to and should not approve the payment
of claims against your county arising under House Bills 193

Mrs. Willie O'Neal, Page 14


and 458 of the 46th Legislature of Texas.

        Trusting that this satisfactorily answers your
inquiry, we are

                                        Very truly yours

APPROVED APR. 23, 1940          ATTORNEY GENERAL OF TEXAS

/s/ Gerald C. Mann
                                By
ATTORNEY GENERAL OF TEXAS
                                        /s/Wm. J. Fanning
                                            Assistant

WJF:AW




APPROVED OPINION COMMITTEE BY B.W.B. CHAIRMAN